UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - x

                      :

KEVIN PITCHER,                  :

                      :

               Plaintiff,  :     **No.:** 1:08-cv-03075-GBD

                      :

       -against-        :     **DECLARATION OF**

MERCK & CO., INC.,       :     **VILIA B. HAYES**

                      :

             Defendant.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - x

       VILIA B. HAYES declares as follows:

       1.     I am an attorney admitted to practice before this Court and a member with the firm of Hughes Hubbard & Reed LLP, attorneys for defendant Merck & Co., Inc. ("Merck"). As such, I am fully familiar with the facts set forth herein. I make this declaration based on my own personal knowledge and the business records of the Firm.

       2.     I make this declaration in support of Defendant's Combined Reply Memorandum in Support of Motion to Stay, and in Opposition to Plaintiff's Motion to Remand.

       3.     Attached hereto as Exhibit A is a true and correct copy of the Memorandum and Order issued in *Aguilar v. Merck & Co., Inc.*, No. 05-CV-4865 (SJ) (E.D.N.Y. Nov. 22, 2005).

       4.     Attached hereto as Exhibit B is a true and correct copy of the transcript of the Status Conference held in *In re VIOXX Products Liability Litigation*, MDL No. 1657, before the Honorable Eldon E. Fallon on June 23, 2005.

       5.     Attached hereto as Exhibit C is a true and correct copy of the letter from the JPML to the Honorable Ricardo H. Hinojosa, dated March 21, 2005.

6.     Attached hereto as Exhibit D is a true and correct copy of the March 6, 2008 Stipulation of Dismissal with Prejudice Against Pfizer Defendants.

7.     Attached hereto as Exhibit E is a true and correct copy of Case Management Order 6 in *In re: New York Bextra and Celebrex Product Liability Litigation*, dated August 14, 2006.

8.     Attached hereto as Exhibit F is a true and correct copy of the Plaintiff Profile Form submitted to Merck by Kevin Pitcher, dated October 22, 2007.

9.     Attached hereto as Exhibit G are true and correct copies of excerpts from Kevin Pitcher's medical records as submitted by Kevin Pitcher to Merck.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

VILIA B. HAYES


Executed this
24th day of April, 2008

# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————x

EVERARDO S. AGUILAR,

                  Plaintiff,            **MEMORANDUM AND ORDER**

    -against-

                                    **05-CV-4865 (SJ)**

MERCK & CO., INC., et al.,

                  Defendants.

————————————————————x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      Currently pending before this Court is an application by defendant Merck & Co., Inc.

("defendant" or "Merck") to stay this action pending a decision by the Judicial Panel on

Multidistrict Litigation ("the MDL Panel") whether to transfer the case as a "tag-along" action to

<u>In re VIOXX Products Liability Litigation</u>, MDL No. 1657, an MDL action pending in the

Eastern District of Louisiana.  Plaintiff Everardo S. Aguilar ("plaintiff" or "Aguilar") has

consented to stay discovery only, has cross-moved to remand the case to state court and opposes

any stay of that motion.

      For the reasons that follow, defendant's motion to stay this action is granted in its

entirety, and the motion to remand is deferred until the issue of transfer is resolved by the MDL

Panel.

<strong>BACKGROUND</strong>

      On September 21, 2005, plaintiff commenced this action in New York State Supreme

Court, Queens County, against Merck (the manufacturer of the prescription drug Vioxx) and a

series of medical providers who are alleged to have improperly prescribed Vioxx to plaintiff.

Merck removed the action to this Court on October 17, 2005, on the basis of diversity

M008032030

jurisdiction, contending that the non-diverse medical providers were fraudulently joined in order to defeat diversity jurisdiction.

On October 31, 2005, Merck moved to stay all further proceedings in this district pending a decision by the MDL Panel on whether the case should be transferred to the MDL Court in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1407.[1] On November 7, 2005, the MDL Panel issued its thirtieth conditional transfer order of tag-along cases, which, absent an objection within 15 days, would transfer this case and others to the MDL Court. See 11/15/05 Letter to the Court from Vilia B. Hayes and Conditional Transfer Order (CTO-30), appended thereto.[2] That same day, plaintiff moved in this district to remand the instant action to state court. See Memorandum of Law in Support of Plaintiff's Motion for an Order Remanding this Matter to State Court ("Pl. Mem."). Plaintiff resists having the remand motion deferred until after the MDL Panel has transferred the case. See id. at 5-7; Plaintiff's Partial Opposition to Merck's Motion for Stay.

## DISCUSSION

As plaintiff correctly contends (see Pl. Mem. at 5), the pendency of a request to transfer a case to an MDL proceeding does not divest the transferor court of the authority to resolve a motion to remand the case to state court. See, e.g., JPML R. 1.5; Evans v. Merck & Co., Inc.,

---

[1] The MDL Panel established the MDL proceeding on February 16, 2005. See In re VIOXX Prods. Liab. Litig. (MDL 1657), 360 F.Supp.2d 1352 (J.P.M.L. Feb. 16, 2005). To date, more than 2,500 cases have been transferred to or filed directly in the MDL proceedings. See Memorandum of Law in Support of Motion of Defendant Merck & Co., Inc. to Stay All Proceedings Pending a Decision on Transfer by the Judicial Panel on Multidistrict Litigation at 3.

[2] This Court has no information as to whether plaintiff has filed with the MDL Panel an objection to transfer.

M009D32031

No. 05-1323-T/AN, 2005 WL 3008643, at *1 (W.D. Tenn. Nov. 9, 2005). Even after the MDL

Panel has issued a conditional transfer order, the transferor court retains the discretion to grant or

deny a motion to stay consideration of a jurisdictional challenge. See id.; North v. Merck & Co.,

Inc., No. 05-CV-6475L, 2005 WL 2921638, at *1 (W.D.N.Y. Nov. 4, 2005). The jurisdiction of

the transferor court does not end until the order of the MDL Panel transferring the case has been

filed with the MDL Court. See David F. Herr, Annotated Manual for Complex Litigation §

20.131 (4th ed. 2004) (hereinafter "Manual for Complex Litigation").

     In connection with the Vioxx litigation, the MDL Panel has expressly observed that "[t]he

pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in

Section 1407 proceedings." In re VIOXX Prods. Liab. Litig., 360 F.Supp.2d 1352, 1354

(J.P.M.L. Feb. 16, 2005). Indeed, in establishing the Vioxx MDL, the Panel transferred to the

MDL Court two actions with pending motions to remand to state court. See id. at 1353-54.

According to the MDL Panel, the motions to remand in those two cases, "as well as in any other

MDL-1657 actions[,] can be presented to and decided by the transferee judge." Id. at 1354

(citing In re Ivy, 901 F.2d 7 (2d Cir. 1990)).

     The Panel's decision is consistent with the law in the Second Circuit, where the

"preferable practice" in MDL litigation is to allow the transferee court to resolve jurisdictional

issues that implicate common questions of law and fact arising in numerous cases. Medical

Soc'y v. Conn. Gen. Corp., 187 F.Supp.2d 89, 91 (S.D.N.Y. 2001) (citing Ivy, 901 F.2d 7); see,

e.g., North, 2005 WL 2921638, at *1 (noting, in Vioxx case, that the Second Circuit has adopted

the "general rule" of deferring decisions on remand motions until after the MDL Panel has

transferred the case); DeBono v. American Home Prods. Corp., No. 04 Civ. 3810(DC), 2005 WL

M00l03?03?

2601177, at *1 (S.D.N.Y. Nov. 16, 2004) ("[T]he Second Circuit has observed that an MDL Court is often best suited to resolve remand motions, especially when the issues involved are likely to recur."). As the Second Circuit observed in Ivy, where the jurisdictional issue "is easily capable of arising in hundreds or even thousands of cases in district courts throughout the nation," and "involves common questions of law and fact," "[c]onsistency as well as economy is . . . served" by having the jurisdictional objections "heard and resolved by a single court . . . ." Ivy, 901 F.2d at 9; see Manual for Complex Litigation § 20.131 ("[T]he pendency of motions raising questions common to related actions can itself be an additional justification for transfer.").

The aforesaid general rule should be followed in the instant case. Merck has challenged the joinder of doctors and/or pharmacies in other Vioxx cases in this circuit, and the plaintiffs' motions to remand have been deferred until after transfer to the MDL litigation, on the ground that "the issues raised in plaintiff's remand motion are not unique to this case." North, 2005 WL 2921638, at *2; Krieger v. Merck & Co., Inc., No. 05-CV-6338L, 2005 WL 2921640, at *2 (W.D.N.Y. Nov. 4, 2005); see also Evans, 2005 WL 3008643, at *1 ("[T]he jurisdictional issues raised in this case are similar to those raised in other [Vioxx] cases that have been or will be transferred to the MDL proceeding."); Walker v. Merck & Co., Inc., No. 05-CV-360-DRH, 2005 WL 1565839, at *2 (S.D. Ill. June 22, 2005) ("[I]t is almost certain that the transferee court will hear and decide many of the same issues Plaintiffs ask this Court to tackle in ruling on their motion to remand."). To be sure, a number of Vioxx decisions from outside this circuit have

-4-

M006D32033

resolved remand motions prior to the MDL Panel's decision on transfer.[3]  Nevertheless, "there

are many more that have chosen to grant a stay," Evans, 2005 WL 3008643, at *1 (collecting

cases), including the two decisions from within this circuit.  North, 2005 WL 2921638; Krieger,

2005 WL 2921640, at *2 (granting stay and noting that courts around the country have stayed

Vioxx cases "pending their transfer to the MDL, including more than 125 with pending remand

motions."); see, e.g., West v. Merck & Co., Inc., No. 05-1166-T/AN, 2005 WL 1630034 (W.D.

Tenn. July 7, 2005); Walker, 2005 WL 1564839.  Moreover, at a proceeding in the Vioxx MDL

litigation, Judge Eldon B. Fallon, the district judge presiding over the MDL proceeding,

expressly acknowledged the advantages of having a single judge decide the many motions to

remand, and he assured the parties that he would deal with the motions "as quickly as possible . .

. ." Transcript of 6/23/05 Status Conference in In re VIOXX Prods. Liab. Litig., at 21 (appended

as Exhibit A to the Declaration of Vilia B. Hayes dated 11/22/05 ["Hayes Decl"]).

    Having considered these decisions and the parties' arguments, this Court concludes "that

having the jurisdictional issues decided in one proceeding will promote judicial economy and

conserve judicial resources," Evans, 2005 WL 3008643, at *2, and will minimize "the risk of

inconsistent rulings . . . ." North, 2005 WL 2921638, at *2 n.2 (quoting Purcell v. Merck & Co.,

No. 05 CV 0443-L(BLM), slip. op. at 4-5 (S.D. Cal. June 6, 2005) (Hayes Decl. Ex. B)); see

North, 2005 WL 2921638, at *2 ("I agree with Merck that the objectives of the MDL process—

namely the avoidance of inconsistent rulings and the conservation of judicial resources–are best

---

[3]  See, e.g., Plubell v. Merck & Co., Inc., No. 05-0831-CV-W-HFS, 2005 WL 2739036 (W.D.
Mo. Oct. 20, 2005); Rabe v. Merck & Co., Inc., Nos. Civ. 05-363-GPM, 05-378-GPM, 2005 WL
2094741 (S.D. Ill. Aug. 25, 2005); Kantner v. Merck & Co., Inc., No. 1:04CV2044-JDT-TAB,
2005 WL 277688, at *3 (S.D. Ind. Jan. 26, 2005).

MDL032034

met by allowing the MDL Court to decide plaintiff's motion to remand."). "[A]ny prejudice to the plaintiff resulting from a stay would be minimal," Evans, 2005 WL 3008643, at *2, and "does not outweigh the judicial economy interests" served by granting a stay. Walker, 2005 WL 1565839, at *2; see North, 2005 WL 2921638, at *2; Krieger, 2005 WL 2921640, at *2. Therefore, Merck's motion for a stay is granted in its entirety.

CONCLUSION

For the foregoing reasons, Merck's motion to stay this proceeding pending the MDL Panel's decision on transfer is granted and plaintiff's cross-motion to remand is deferred until the issue of transfer has been resolved.

**SO ORDERED.**

Dated:     **Brooklyn, New York**
           **November 22, 2005**

                    **ROANNE L. MANN**
                    **UNITED STATES MAGISTRATE JUDGE**

-6-

MO09304035

# Exhibit B

1

```
 1                    UNITED STATES DISTRICT COURT
 2                    EASTERN DISTRICT OF LOUISIANA
 3                        NEW ORLEANS, LOUISIANA
 4
 5
 6   IN RE:  VIOXX PRODUCTS        *   Docket MDL 1657-L
         LIABILITY LITIGATION     *
 7                                 *   June 23, 2005
                                   *
 8   * * * * * * * * * * * * * * * *   9:30 a.m.
 9
10
11                  STATUS CONFERENCE BEFORE THE
                     HONORABLE ELDON E. FALLON
12                  UNITED STATES DISTRICT JUDGE
13   APPEARANCES:
14
15   For the Plaintiffs:          Seeger Weiss
                                   BY:  CHRISTOPHER A. SEEGER, ESQ.
16                                 One William Street
                                   New York, New York 10004
17
18   For the Defendants:          Stone Pigman Walther Wittmann
                                   BY:  PHILLIP A. WITTMANN, ESQ.
19                                 546 Carondelet Street
                                   New Orleans, Louisiana 70130
20
21   Official Court Reporter:     Toni Doyle Tusa, CCR
                                   500 Poydras Street, Room B-406
22                                 New Orleans, Louisiana 70130
                                   (504) 589-7778
23
24
25   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
```

EXHIBIT C PAGE 17

M0C3100208

2

1                          PROCEEDINGS

2                         (June 23, 2005)

3             THE DEPUTY CLERK:  Everyone rise.

4             THE COURT:  Be seated, please.  Good morning, Ladies

5    and Gentlemen.  Call the case, please.

6             THE DEPUTY CLERK:  MDL 1657, In Re: Vioxx.

7             THE COURT:  Counsel, make your appearances for the

8    record.

9             MR. SEEGER:  Good morning, Your Honor.  Chris Seeger

10   for the plaintiffs.  I'm going to be playing Russ Herman today.

11            MR. WITTMANN:  Phil Wittmann, Your Honor, liaison

12   counsel for the defendants.

13            THE COURT:  I understand we have some counsel on the

14   phone.  Who is that?

15            MS. SOTOODEH:  Pamela Sotoodeh in Chicago.

16            MS. KOPELMAN:  Richard Kopelman of Decatur, Georgia.

17            THE COURT:  Good morning.  This is our monthly status

18   conference.  I have received from the liaison counsel the

19   proposed agenda.  We will take the items in order.  The first

20   is LexisNexis File & Serve.  Let me have a report on that.

21            MR. SEEGER:  Judge, we continue to have problems with

22   LexisNexis.  We are having problems getting documents posted

23   and served.  On the other end, they're having problems

24   identifying firms that are already previously registered.  We

25   have got some calls set up with them to try to work through

EXHIBIT _C_ PAGE _18_

M0C3100209

3

1    some of these issues.  We are hoping to be able to do that.

2         THE COURT:  Let's get them in person in the court.

3    Let's do it next week.  I will get my staff to give you a day.

4    I would like to see LexisNexis here, the president of the

5    company, or somebody who can talk with me about any problems.

6    I would like you all present to get this resolved.  We need to

7    go on line as quickly as possible.  We don't have time to have

8    to rely on surface mail.  There are too many people in this

9    case.  It really needs to be worked out.

10        I'm a little disappointed because LexisNexis

11   just took this over.  I've had some experience with the people

12   from whom they bought this company and we didn't have any

13   problems with the prior group.  I don't know why LexisNexis —

14   a bigger outfit, more resources — is having problems when the

15   earlier group did not, so maybe they can help me understand

16   that.

17        MR. SEEGER:  We will make arrangements to bring them

18   in.

19        THE COURT:  Thank you.

20        MR. WITTMANN:  Yes, Your Honor.  We have not had

21   problems with LexisNexis.  It seems, from the defendants'

22   standpoint, to be working okay.  The few issues that have come

23   up, we have dealt directly with their representatives and they

24   have been responsive to our requests, so we are satisfied.

25   It's going okay from our standpoint.

EXHIBIT C PAGE 19

M00310G210

4

1          If the Court please, we might give the folks a

2   statistical background on what's happening in the MDL at this

3   point.  As of June 15, we had 907 cases in the MDL.  Although

4   some of those cases have not yet been served on Merck, they are

5   here, 907 of them.  There are over 700 Vioxx products liability

6   cases served and pending in federal court but not yet here.

7   There are over 170 cases served and pending in state courts

8   other than New Jersey and California.  There are over 1,900

9   cases served and pending in the New Jersey consolidated

10  proceeding.  There are approximately 180 cases pending in the

11  California state court, and those cases involve approximately

12  1,000 plaintiffs.  That's our statistical update.

13          THE COURT:  What about the numbers of class actions?

14          MR. WITTMANN:  Class actions I believe are 118.

15  That's up about eight from our last status conference.  We

16  either have provided or will provide copies of the additional

17  class action complaints to plaintiffs' counsel.  Their deadline

18  for filing the master complaint, incidentally, is August 1.

19          THE COURT:  Trial settings.

20          MR. WITTMANN:  Yes, Your Honor.  The first case that

21  we know that's set for trial is the Ernst case in Brazaoria

22  County, Texas, on July 11, 2005.  We have a case in New Jersey,

23  the Humeston case, which is set on September 12, 2005.  The

24  Guerra case is set for trial in Hidalgo County, Texas, on

25  September 19, 2005.  The Zajicek case is set for trial in

EXHIBIT ___C___ PAGE _20_

5

1   Jackson County, Texas, on September 26, 2005, but we are told
2   that's likely to be continued over to the first quarter of
3   2006.   The Tomlin case is set for trial in Florida in St. Lucie
4   County sometime between October 3 and December 30, 2005.   That
5   exact date has not been fixed yet.   In addition to that, we
6   have a hearing set in the Engineers case in New Jersey on
7   June 30 to determine whether the court will certify a
8   nationwide case of third-party payors.
9           THE COURT:  One of the challenges, from the
10  standpoint of the MDL, is to deal with cases not only
11  throughout the country in the federal system, but also cases
12  that are in the state system.   One benefit of the MDL is
13  consistency and uniformity.   The significance of uniformity and
14  consistency in the large numbers of cases is to allow you
15  folks, who are the lawyers in the cases, to be able to get a
16  read on matters so that hopefully you can evaluate the cases
17  and see whether or not there's any shorter way of dealing with
18  it, namely settlements or dealing with it in some motion way or
19  other evidence.   Consistency or at least predictability is one
20  of the benefits of trials.
21          My concern oftentimes, if there are trials in
22  various jurisdictions, is that it doesn't afford the same
23  consistency if you had it in one jurisdiction, wherever it is.
24  It just gives you some more consistency and, therefore, more
25  predictability, and you're able to then learn from that

M00310021 2

6

1   particular trial.

2              My hope was that we could begin trying cases in

3   the MDL as quickly as we can so that you can have that read and

4   benefit, but I do recognize that cases have been in state court

5   for about four years now.  It's hard to have a litigant wait,

6   after they have done all the work in a particular case, and

7   then have to delay unduly.  I have to measure both of those

8   things and weigh both of those things.  I've been getting a lot

9   of good cooperation from the various state courts, and I think

10  that many of them feel the same way as I do.  We will do the

11  best we can with it.  In that regard, let me segue into the

12  next item, which is the selection of cases for an early trial

13  date in this particular proceeding.

14             MR. SEEGER:  Judge, if you don't mind, on the last

15  point, just for the benefit of the lawyers reading the

16  transcript, we have requested of the defendant that going

17  forward, when they list the trial cases, that they give us the

18  name of the case, the court it's in, the attorney of record,

19  and if they can tell us what the injury is.  I think that will

20  assist us in coordinating with those lawyers and help our state

21  federal liaison committee, as well.

22             THE COURT:  Fine.  We have got to watch from both

23  sides that cases are not tried before it's appropriate to try

24  them because that's going to skew the situation.  It's not

25  going to help anybody to try a case that is either not

EXHIBIT ___C___ PAGE ___22___

M003100213

7

1  representative or that's not ready to be tried. It's going to
2  hurt the rest of your cases. Let's be conscious of that.
3       MR. WITTMANN: I think, in response to Chris' point,
4  we have been talking about Ernst and Humeston for a long time
5  now. I thought I had given that information to Russ, but we
6  will make sure he has it from now on.
7       THE COURT: Talk to me about trial dates for the
8  cases here.
9       MR. WITTMANN: Trial dates here, Judge, Mr. Herman
10 and I have been meeting and working on it ourselves. More
11 recently than that, Mr. Marvin has been meeting with Mr. Seeger
12 and others on the plaintiffs' steering committee to try and get
13 a pool of cases from which we can select cases for trial here
14 in the Eastern District. I would like to let Mr. Marvin
15 address that since he has been more familiar with the recent
16 negotiations than I have.
17      THE COURT: Okay.
18      MR. MARVIN: Good morning, Your Honor. Your Honor,
19 we have identified two pools of cases that could yield cases
20 for early trials. The first pool could come from the Eastern
21 District of Louisiana, where there are approximately 40 cases
22 presently on file. What we would need to do for those cases is
23 to have a short schedule for submission of the plaintiff fact
24 sheets so that both plaintiffs and defendants could look at
25 those cases and make some selections from those cases.

EXHIBIT C PAGE 23

MDC3100214

8

1       A second pool of cases, though, could come from
2   cases that have already been filed in the federal court and,
3   indeed, were filed even before the establishment of this MDL.
4   Discovery in a number of those cases has proceeded, and some to
5   an advanced stage.  There are approximately 40 cases, for
6   example, where requests for interrogatories have been made,
7   answers have been given, plaintiff fact sheets have been
8   submitted, and medical records collected.  That's an important
9   matter because collection of medical records could take several
10  months.  So we do have 40 cases where we think that, working
11  with the plaintiffs, we can identify those cases.  Those cases
12  would have objective criteria for the selection of those cases
13  because of the advanced discovery and, indeed, we would be
14  prepared to send our list of cases that we think would fit that
15  criteria within the next five days.
16       THE COURT:  Let's do that in five days, then let me
17  hear from the plaintiffs in five days, and then we will meet
18  and pick the cases.  The Eastern District cases I can try here.
19  The other cases that are put in from other states, even in the
20  federal system, in view of the Lexicon case I may have
21  difficulty trying them unless there's some stipulations.  I can
22  do it in one of two ways.  I can either try them with the
23  stipulations here or I can go to the area that the case
24  emanates from.  An MDL judge sits throughout the country and is
25  able to do that.  I can go to the other area.

EXHIBIT C PAGE 24

M0C3I00215

9

1          The thing that you both have to look at is the

2    Circuit that you are dealing with because if I try them here,

3    even with stipulations, my understanding is the Fifth Circuit

4    will take the case from me in the appeal.  If I try them in

5    another area, the circuit in that area will try it.  I don't

6    know whether it's good or bad or whether people have feelings

7    one way or the other, but at least that's something for both

8    sides to consider when we talk about those cases.

9          MR. MARVIN:  Fair enough.

10          THE COURT:  Also, logistics, if I'm going to gq some

11   other place, that area needs to know I'm going to be there, the

12   court space and the Marshals Service and things of that nature.

13          MR. MARVIN:  Thank you, Your Honor.  Once that list

14   is completed, we will continue working with the PLC to review

15   that list and hopefully come up with some cases.

16          THE COURT:  After five days, if the plaintiffs can

17   get to me, I'll set a meeting.  I will see both of you and pick

18   the cases.

19          MR. SEEGER:  Judge, just a couple of brief comments

20   on this.  We are all for getting a case scheduled for trial as

21   soon as possible.  We like the November/December timeframe.

22   I'm not one of those lawyers and I don't think the attorneys on

23   the PSC are lawyers that believe we have to turn over every

24   document and every stone before we start trying a case.

25   However, I do want to make the Court aware of the fact that we

EXHIBIT C  PAGE 26

M00310216

10

1    are trying to get discovery from the FDA and some third parties

2    and some remaining discovery from Merck that we would like to

3    get.

4            THE COURT:  The early cases, if we are going to push

5    then as quickly as we can to make them meaningful, it's not

6    just to try the cases.  It's to give both of you some idea of

7    how a jury feels about that particular case.  First, I need

8    cases that are ready for trial.  It's not going to do you any

9    good to try a case that's not ready for trial because whatever

10   the verdict is, somebody is going to have an excuse for it and

11   say, "Well, but for it being ready, it would have been

12   different," that sort of thing, whatever it is.

13           Secondly, I would like you to give some thought

14   to grouping them.  If we are dealing with death cases, I don't

15   want to try all death cases because there are personal injury

16   cases, so we ought to try some cases that will give you some

17   benefit from the jury's view of that particular case.  We need

18   cases that are ready and we need some variety.

19       MR. SEEGER:  Thank you, Judge.  With your comments in

20   mind, we will be talking with the defendants about potentially

21   a pool.  We will be proposing cases, as well.  Thank you.

22       THE COURT:  Thank you.  Class actions is the next

23   item on the agenda.

24       MR. WITTMANN:  Yes, Your Honor.  I have really

25   covered that already.  I think it's on track in accordance with

EXHIBIT C    PAGE 24

M0C3100217

11

1      the Pretrial Order governing class actions, and the plaintiffs

2      are due to file their master complaint or complaints by

3      August 1.

4            THE COURT:  Okay.  The discovery directed to Merck.

5            MR. WITTMANN:  Yes, Your Honor.  There are a couple

6      of facets to that.  First of all, I don't think your Pretrial

7      Order on the individual cases is generally available yet, but

8      we have submitted an agreed Pretrial Order to you on the

9      individual cases.  I understand you have signed it, but it

10      hasn't been posted yet.

11            THE COURT:  I have signed it, yes.

12            MR. WITTMANN:  There are two parts to that order.

13      The first part deals with the actual procedure for filing

14      motions and dealing with that process in the MDL.  The second

15      part, which we suggested be designated "Pretrial Order __ A,"

16      if you recall, dealt with the actual review of prior discovery

17      produced by Merck in other cases.  That process is ongoing.

18      The protocol for doing that is established by that Pretrial

19      Order and the parties are doing that now, even as we speak, up

20      in New Jersey.

21            We don't have any problems with respect to the

22      documents that have already been produced and the depositions

23      that have been taken.  Those are being made available to the

24      plaintiffs' steering committee, and so far as I know that

25      process is going on without any problem.  We have some

EXHIBIT C  PAGE 27

M303100218

12

1    significant disputes with respect to the additional discovery

2    propounded by the plaintiffs' steering committee, both the

3    interrogatories and the document requests. It's our belief

4    they are overly broad. We have made that clear to the

5    plaintiffs' liaison counsel and plaintiffs' steering committee.

6    The parties have been working, trying to narrow those requests

7    to take into account the extent of which those requests are

8    duplicative of materials produced in other proceedings which

9    are being made available up in New Jersey.

10            We have set, by agreement with the plaintiffs'.

11   steering committee, I think a deadline of July 5 by which to

12   complete that meet-and-confer process to try and narrow down to

13   see if we can agree on what additional materials will or will

14   not be produced. If we are unsuccessful, then we will be in to

15   see Your Honor, I think, within 10 days after that.

16            THE COURT: Let me just make a couple of comments on

17   the discovery part. Discovery, particularly paper discovery,

18   is supposed to be helpful and not just stumbling blocks. The

19   purpose of discovery is to help you try your cases or get ready

20   for trial. If you get so tied into discovery, it gets to be so

21   voluminous and so time consuming and so burdensome that it saps

22   not only your energy, but your resources and your thinking and

23   sidetracks you, it is not good. It's got to be helpful. It

24   can't be just, "Let's get it because it's there," "Let's not

25   give it because we have got it." It's got to be helpful.

EXHIBIT C PAGE 23

M003100219

13

1      My thinking on discovery is that you all first
2 meet and share with each other a draft of what you need and
3 discuss it.  If you can arrive at an agreement, that's fine.
4 If you can't arrive at an agreement, then before it's in final
5 form, talk to me about it.  I'll tell you what my ruling will
6 be so we don't have to go back and forth.  The plaintiffs don't
7 have to wait for 30 days to get a response, which is an
8 objection, and then they have to wait for another 30.  We don't
9 have time to do that, so we have to streamline it.  Get
10 together and see what you agree on.  I don't have to be brought
11 into the agreement.  The disagreements, bring me in and I will
12 resolve the disagreements.  We will do it as quickly as we can.
13      MR. WITTMANN:  Your Honor, are you saying that during
14 the course of our negotiations, if we do reach some impasse,
15 that you would welcome a conference call?
16      THE COURT:  Get it to me right there and I'll resolve
17 the controversy.
18      MR. SEEGER:  If Russ were here, he would have a great
19 quote from William Shakespeare something to the effect, "I've
20 never met a defendant that said a discovery request wasn't
21 burdensome," but having said that —
22      THE COURT:  I'm sure Shakespeare said something like
23 that.
24      MR. SEEGER:  In New York there's a guy named
25 Shakespeare who said something along those lines.  The truth is

EXHIBIT  C  PAGE  29

14

1    we served discovery.  Merck has asked for a little bit more

2    time to continue discussing it.  We are going to do tnat.  We

3    are anxiously awaiting their response.  There are no real

4    surprises in what we are asking for.  As you said, Your Honor,

5    the case is being litigated.  It has been litigated for a

6    while.  I think we all know what we need.

7           THE COURT:  Again, if you have already got some

8    material, let's work out something that if you've got it they

9    don't need to reproduce it.  I know that sometimes you receive

10   some material that's case specific and this is noncase

11   specific, so you may need to go outside of that.  If you have

12   got it, let's get on to something else.  The Pretrial Order

13   governing individual cases.

14          MR. WITTMANN:  Yes, Your Honor.  You have those now.

15   There are actually two Pretrial Orders.  One relates to the

16   production of documents in other cases, which is really a part

17   of the Pretrial Order for the individual cases.

18          THE COURT:  I have that.  I signed it.  It should be

19   posted.  Merck employee information is the next item.  I have

20   briefs on that.  I've set next Wednesday at 2:00 to have a

21   hearing on that oral argument on that question.  The next item

22   is discovery directed to the FDA.  How are we with that?  We

23   had some misunderstandings.  I got the FDA on the phone and

24   everybody was able to talk about it.  I had the opportunity to

25   express my views.  I haven't heard on it formally since then.

EXHIBIT C  PAGE 30

M003100221

15

1          MR. SEEGER:  Your Honor, my co-lead counsel,

2    Andy Birchfield, met with the FDA, so he is going to address

3    this issue.

4          MR. BIRCHFIELD:  Your Honor, Russ Herman, Troy

5    Rafferty, and I met with the FDA with their counsel and with

6    the U.S. attorney Sharon Smith at the FDA headquarters in

7    Rockville, Maryland.  We discussed the items on the subpoena

8    and we were able to reach agreement on a number of those

9    issues.  We have continuing dialogue on some of the others.

10   The important thing was that we were able to at least get the

11   discovery process, the review process, and the production

12   process moving while we are continuing dialogue.  They have

13   agreed to provide us with the first page of the documents that

14   were produced in Congress so we can review those and identify

15   which ones we actually need.  They have also agreed to start

16   the production.  We expect by the end of July to get the

17   initial production.  They will continue that on a rolling

18   basis.  We are making considerable progress on the FDA

19   production.

20         THE COURT:  I should express the Court's appreciation

21   to the chair of the FDA.  I appreciate his help.  He should

22   know that I am obliged to him for getting involved in this

23   matter and helping us move forward.  I do publicly appreciate

24   his help.

25         MR. BIRCHFIELD:  One other thing on that.  Merck,

EXHIBIT  C  PAGE 2

M303100222

16

1   Ben Barnett, was also there.  There is cooperation there.  They
2   are agreeing to provide a list of documents that are between
3   the FDA and Merck so we can review that list and determine
4   which ones need to be produced and which ones we already have.
5        THE COURT:  Thank you very much.  Discovery directed
6   to third parties is the next item.
7        MR. SEEGER:  Your Honor, we are in the next couple of
8   days going to get out probably about a dozen or so subpoenas to
9   third parties.  We are going to try to stage it in a way so we
10  do it in phases, but at this point there's not much to report
11  other than we are going to get the subpoenas out.
12       THE COURT:  Let's keep that on the agenda so that you
13  can talk to me about it next time.  We really ought to work
14  through that.  That's an important part.  Deposition
15  scheduling.
16       MR. WITTMANN:  The first and third weeks of the
17  month, Judge, were set by prior Pretrial Order.  We had sent a
18  request to the plaintiffs' steering committee last week asking
19  that depositions be set in some of the Louisiana cases starting
20  the first week in July or, alternatively, the third week in
21  July, depending upon what they were able to pull together from
22  their clients.  We left the selection of the plaintiffs to be
23  deposed to the plaintiffs' steering committee because we are
24  trying to accommodate the individual plaintiffs and not just go
25  out and arbitrarily pick dates and select them.  Your Honor has

EXHIBIT C PAGE 32

MDG31002223

17

1  told us in our prior Pretrial Order that we are to cooperate in

2  trying to arrange a mutually agreeable date before running out

3  and setting depositions by notice.

4             We have not heard back.  I understand from the

5  plaintiffs' steering committee this morning that the cases that

6  we have selected may not be suitable for the early trials in

7  this Court, so we are waiting to get a list, really, of the

8  cases that we think will go forward for an early trial and will

9  set them for deposition as soon as we can.

10            THE COURT:  Okay.  Let's keep an eye on prioritizing.

11  There's some issues that might cut across the spectrum.  You

12  may want to take depositions of individuals that have something

13  to say about the general theories so they will be significant

14  in each case, but with regard to case-specific discovery I

15  think you should focus on the cases that we select for trial

16  and do those.  Now, that doesn't mean that you only have to

17  have one wave of depositions.  You can have a couple of tracks

18  going on.  You have to be able to do several tracks at the same

19  time in a case like this.

20            MR. SEEGER:  You just anticipated my comments.  We

21  think that the depositions of plaintiffs should somehow

22  dovetail with what we are doing on trial schedules, although I

23  would like to correct the record.  I don't have any opinion on

24  whether cases by any other lawyer are appropriate for trial or

25  not.  I think we have to come up with a criteria for selecting

EXHIBIT____C____ PAGE 33

M003100224

18

1   cases that will inform decisions that may be made down the road
2   between the parties.
3           THE COURT:  The next item is the plaintiffs' profile
4   form and Merck's profile form.  I understand from the parties
5   that with regard to the plaintiffs' profile form they have
6   reached an agreement.  On Merck's profile form, they have not
7   reached an agreement.  Each side submitted to me their
8   disagreements and I have resolved the conflict.  I'll be today
9   putting out the defendants' profile form that will be used in
10  this case.  That will be resolved.
11          Also, with the profile forms of both sides, it
12  seems to me that we ought to do that in waves.  The first wave,
13  I would like both the plaintiffs and the defendants to focus on
14  and limit the forms to the cardiovascular events -- the
15  myocardial infarctions, the ischemic strokes, the deaths -- and
16  then shortly thereafter, when we get some experience with those
17  forms and with filling them out and any problems, in resolving
18  those problems we ought to be able to step it out quickly to
19  the second wave, which may not require as detailed information.
20  It seems to me to be the best way of doing it.  I put some
21  handwritten notes on this form and I will simply adopt it in an
22  order and give you my thinking on that particular form.  The
23  plaintiffs will have to redraft the form and submit it.
24  Medical records from healthcare providers is the next item.
25          MR. SEEGER:  Judge, I think that we have agreed on a

EXHIBIT___C___ PAGE__34

M003100225

19

1    procedure for having medical records posted online almost
2    identical to what we are doing in New Jersey for plaintiffs'
3    lawyers as well as defense counsel to have access to records in
4    a secure way.  I think that's been accomplished.
5           MR. WITTMANN:  That's correct, Your Honor.
6           THE COURT:  Contact with claimants' healthcare
7    providers.  That's the subject of another motion.  I received
8    briefs for reconsideration on that issue.  I'll be hearing that
9    in oral argument on Wednesday, also.  The plaintiffs'
10   depository is the next item on the agenda.
11          MR. SEEGER:  We are happy to report we are up and
12   running.  We have got it staffed and it is available to
13   plaintiffs' lawyers who want to come look at documents and
14   contribute to the document review.  We welcome the help.
15          THE COURT:  Talk with the defendants.  If they have
16   no objection, I would like to at least look at the depository,
17   if that's possible, just see that it's up and running and so
18   forth.
19          MR. WITTMANN:  That's no problem, Judge, whenever
20   counsel wants to set it up.
21          THE COURT:  Set it up and we'll take a look at it.
22   The confidentiality agreement is the next one.
23          MR. WITTMANN:  That's been signed.  Your Honor, I
24   haven't had any problems with it.  We had one question as to
25   whether some of the material that was attached to I believe the

EXHIBIT C PAGE 36

M0C3100226

20

1   brief filed by the state liaison committee may have contained
2   some confidential information.  I don't believe it really did,
3   but the time hasn't yet run for us to designate.  We are still
4   looking at that.  We may have some comment about it.  I don't
5   think it's a major problem.

6           THE COURT:  That's an issue always of concern and
7   it's a balancing issue.  It's a balancing issue between the
8   First and Sixth Amendments.  The First Amendment, of course,
9   the right of the public to know, it's vital in a democracy that
10  the public know.  It's also vital in a democracy that people
11  have every right to a fair trial.  There's some conflict
12  occasionally between the First and the Sixth Amendment.  The
13  way that it's worked out, in my judgment, in a fair way is to
14  not deprive the public of a right to know, but perhaps delay
15  the public's information, unless it is a critical type of
16  information which is necessary for immediate knowledge.

17          I'm focused, instead, on the right to a fair
18  trial for both sides, and there is certain proprietary
19  information in these documents that drug companies
20  realistically and legitimately get concerned about releasing,
21  proprietary information that could affect their present or
22  future business practices.  I am conscious of the public's
23  right to know, but I am also conscious of the fact that if I
24  don't have a confidentiality order, then it delays the
25  discovery and delays trials and delays justice.  I have dealt

EXHIBIT C   PAGE 30

M003100227

21

1  with this issue in that fashion.  We have a confidentiality

2  agreement which will allow the defendants comfort to produce

3  certain information without fear that their future economic

4  security is in jeopardy.  The remand issues.

5        MR. SEEGER:  Judge, that's in the report.  You are

6  going to be dealing with remand motions as a group by

7  procedures that you will be setting up.

8        THE COURT:  Right.  This is always an issue which the

9  MDL Court has to look at.  The question is posed.  There are

10 various issues of remand in various cases throughout the

11 country.  Again, a significant advantage of the MDL concept is

12 some consistency.  The Rule of Law is really based on

13 consistency.  If different decisions are made by numerous

14 judges, then you have no consistency and no predictability and

15 no one knows exactly what to do or how to do it.  It's easier

16 if one court decides some of these matters than if 50 or 100

17 courts decide the matter.

18        I'm conscious of dealing with the remand as

19 quickly as possible, but I do want to get them all together,

20 look at them, see if I can group them in some way, and then

21 direct my attention on each particular group and deal with that

22 issue in a consistent and fair fashion for that group.  I will

23 be dealing with them as quickly as I can, but also with an idea

24 of having more consistency.  I'll be speaking about this

25 perhaps later on because I do have some concepts and ideas

EXHIBIT  C  PAGE 37

M00310022B

22

1    about this.  Tolling agreements is the next item.

2                MR. SEEGER:  Judge, just to report that we have

3    accomplished our goal.  It was a long negotiation, but we got

4    it resolved.  Both sides have compromised and agreed on a

5    tolling agreement.  It seems to be working.  We are getting

6    cases in.

7                MR. WITTMANN:  The agreement was filed, I guess, on

8    the 9th of this month, so it's just recently been filed, but

9    we are starting to get people taking advantage of it.  We are

10   getting the short form exhibits mailed in.  We have a procedure

11   set up by the defendants to respond to those exhibits as they

12   come in.  We are keeping a record of them so we know exactly

13   where we stand with respect to the people who have elected to

14   go forward on the tolling agreements, Your Honor.

15               THE COURT:  I appreciate the help on both sides on

16   the tolling agreements.  I think it's good for each side.  I

17   think there's different advantages, but advantages for each

18   side, and I think it will be helpful to you.  Certainly, I

19   think it will be helpful to the litigants.  The next item is

20   state/federal coordination.  State liaison committee, are there

21   things that you want to say?

22               MS. BARRIOS:  Yes, Your Honor.  We have been fairly

23   active since our last meeting here.  At the Court's order, we

24   were allowed to file a brief on the issue of the Merck employee

25   information.  We did that and I question, Your Honor, if you

EXHIBIT___C___PAGE_38

M0C3100229

23

1    would like us to be present at the hearing on Wednesday to make

2    a presentation?

3          THE COURT:  Sure.  You are always welcome to

4    participate in a hearing.

5          MS. BARRIOS:  Thank you, Your Honor.

6          THE COURT:  I'm interested in your views.  I have

7    looked at the brief.  A lot of it has already been said.  I

8    don't think I need any response from the defendants on it.  I

9    think you have covered it in your particular response.  Let's

10   keep that in mind.  I know that oftentimes you see matters in

11   the same fashion as perhaps the plaintiffs' steering committee.

12         MS. BARRIOS:  Yes, Your Honor.

13         THE COURT:  If you do, just "Me, too" it.  I don't

14   need you to restate it.  That's sufficient.  If you see it in a

15   different light, just carve that out.  If I need some response,

16   I will direct the defendants to give me a response on it.

17         MS. BARRIOS:  Yes, sir.  We have no intention of

18   being duplicative.  With the cooperation of Mr. Wittmann's

19   office and Mr. Herman's office, we have received a roster of

20   over 700 plaintiffs' attorneys names.  We sent out our first

21   very lengthy newsletter detailing the orders, the web site,

22   etc.  We have gotten extremely good feedback from different

23   plaintiffs' attorneys across the country on it.  We have had

24   several conference calls with our committee.  Mr. Witkin on our

25   committee made a presentation at the Mealey's seminar about the

EXHIBIT C PAGE 39

M00310020230

24

1   MDL yesterday.  We met with the PSC last night and look forward

2   to working with them to reserve the rights of the plaintiffs'

3   attorneys and their clients.

4           THE COURT:  I appreciate all of your interest and

5   work and willingness to work on the committee.  It's very

6   important.  I know there's some interests that are different.

7   That's the way of the world.  There's some joint interests and

8   so rather than reinvent the wheel and do things a second time,

9   third time, fourth time, it is helpful for you to be in the

10   development of it so that you can just migrate that information

11   into your proceedings so you don't have to redo it again.

12           MS. BARRIOS:  Yes, Your Honor.  Thank you.

13           MR. SEEGER:  From the PSC's perspective, we have

14   enjoyed the working relationship with the committee.  We think

15   the lawyers on the committee are of extremely high quality.

16   They have been proactive in anticipating issues.  We welcome

17   their input on anything we do.  We did have dinner last night,

18   had a chance to talk through some important issues before we

19   poured the first bottle of wine -- which was helpful -- and we

20   are looking forward to the continued cooperation between our

21   committee and theirs.

22           THE COURT:  The waiver of service is the next item.

23           MR. WITTMANN:  Yes, Your Honor.  You have the

24   Pretrial Order in effect on that.  I think it's Pretrial

25   Order 15, and we haven't had any problems.

EXHIBIT __C__ PAGE __40__

M003100231

25

1          THE COURT:  The next item is direct filing into the

2    MDL.  Ms. Loretta Whyte was kind enough to meet with us earlier

3    today to discuss that in more detail.  The issue, of course, is

4    whether or not the party who files directly into the MDL should

5    have the MDL caption or should have their independent caption.

6    Ms. Whyte tells us that the best way of doing it, from her

7    vantage point, is to have an individual caption just as you

8    would if you file a regular case, but put on that "Related

9    Case, MDL" and give the number.  She will then migrate it into

10   the MDL proceedings.  That will be the best way of doing that.

11   Is that right, Ms. Whyte?

12          MS. WHYTE:  Yes.

13          MR. SEEGER:  There's one thing on that issue that's

14   important to note for people reading the transcript.  There's

15   been some confusion whether the lawyers need to be admitted

16   pro hac to file cases.

17          THE COURT:  They do not need to be admitted pro hac.

18   I have waived that.  Anybody who's in the MDL or has a case in

19   the MDL is able to handle a matter.

20          MR. SEEGER:  Just to be clear, Ms. Whyte, the cases

21   that get filed must mention the Vioxx MDL and that it's a

22   related case?

23          MS. WHYTE:  It's a related case.

24          THE COURT:  Anything further on that?  Pro se

25   claimants.

EXHIBIT __C__ PAGE __41__

M003102232

26

1          MR. SEEGER: Well, Your Honor, we have been referring

2     what we have been getting from the Court to our plaintiffs'

3     liaison counsel and these are being dealt with.

4          THE COURT:  I think we have a system of doing it.  So

5     far most of the pro se claimants have been individuals who have

6     not been able to be personally present at these meetings.  They

7     are generally incarcerated some other place and can't make it

8     here, so they need a lawyer.  They have expressed their

9     interest in being represented, so I have given that to liaison

10    counsel.  I understand that what they do is contact lawyers in

11    the state of that particular institution and make those lawyers

12    available to them, or at least tell them that they would be

13    available.  That seems to be working.

14          Anything further from anyone that I haven't

15    covered before I set the next status conference date?  Anything

16    either from the state committee, liaison committee, or anyone

17    in the audience?  I'm interested in hearing your views.

18          MR. WITTMANN:  Nothing from the defendants,

19    Your Honor.

20          MR. SEEGER:  Nothing further from plaintiffs,

21    Your Honor.

22          MS. BARRIOS:  Nothing further.

23          MR. BECNEL:  Judge, I have a lawyer who has referred

24    me 160 cases from Oregon.  I have dealt with Mr. Wittmann's

25    associate, Ms. Wimberly.  He wants to bring them all here, but

EXHIBIT C PAGE 42

M0C3100233

27

1    because of the peculiar law in Oregon he is starting to have to

2    file them right away in Oregon.  I'm trying to get some sort of

3    a deal with the defendants to get them all here without missing

4    a statute problem.  I'm just wondering how we can work that

5    out.

6         MR. WITTMANN:  We are working that out now, actually,

7    Your Honor, with a procedure for the filing of a master

8    complaint in the MDL that will permit people to come in and tag

9    along and sign on with the short form joinder pleading, which

10   should take care of Mr. Becnel's problem.

11        THE COURT:  Mr. Seeger, get with Mr. Becnel and see

12   if we can handle this particular problem.

13        MR. SEEGER:  Yes, Your Honor.

14        MR. GIRARDI:  Tom Girardi, Your Honor.

15        THE COURT:  Mr. Girardi.

16        MR. GIRARDI:  Your Honor, we now have a state court

17   judge for the 2,000 cases in California.  I will provide you

18   with that contact information, Judge Chaney.

19        THE COURT:  Please do that because I am trying to

20   keep in touch with the state court judges.  When we begin

21   setting some Daubert hearings or other hearings, if they wish

22   to come in the case, we will do either the voice or do video

23   streaming so that they can participate and deal with it

24   according to their law, but they won't have to retake the

25   witnesses.  If they have any questions, they can ask the

EXHIBIT C PAGE 43

M093100234

28

1   questions while the witnesses are there, so I would like to

2   know that. Thank you.

3           MR. SEEGER:  Just for the record, if I could ask

4   Mr. Girardi to copy liaison counsel on that?

5           MR. GIRARDI:  Yes.

6           THE COURT:  Anything else?  The next status

7   conference is Tuesday, July 19, 9:30.  I'll meet with the

8   liaison counsel in my chambers at 8:00 that day to begin

9   getting ready for this meeting.  I appreciate everybody's

10  cooperation and for their reports.  Thank you.  Court will

11  stand in recess.

12          THE DEPUTY CLERK:  Everyone rise.

13          (WHEREUPON, the Court was in recess.)

14                          * * *

15                        CERTIFICATE

16          I, Toni Doyle Tusa, CCR, Official Court Reporter,
    United States District Court, Eastern District of Louisiana, do
17  hereby certify that the foregoing is a true and correct
    transcript, to the best of my ability and understanding, from
18  the record of the proceedings in the above-entitled and
    numbered matter.
19

20

21

22                      _Toni Doyle Tusa_
                        Toni Doyle Tusa, CCR
23                      Official Court Reporter

24

25



EXHIBIT C PAGE 44

M0C3100235

# Exhibit C

JUN. 9. 2005  5:34PM    JPML                                    NO. 4277    P. 2/2

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

CHAIRMAN:
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

MEMBERS:
Judge John F. Keenan
United States District Court
Southern District of New York

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Robert A. Cahn
Executive Attorney

DIRECT REPLY TO:

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:        [202] 502-2888

http://www.jpml.uscourts.gov

March 21, 2005

Honorable Ricardo H. Hinojosa
U.S. District Judge
1701 W Bus Highway 83
Bentsen Tower, Suite 1028
McAllen, TX 78501

Re: MDL-1657—In re Vioxx Products Liability Litigation

　　*Felicia Garza, et al. v. Merck & Co., Inc., et al.*, S.D. Texas, C.A. No. 7:05-17

Dear Judge Hinojosa:

　　Presently before the Panel pursuant to 28 U.S.C. § 1407 is a notice of opposition to the Panel's conditional transfer order in the above matter pending before you. The parties will have an opportunity to fully brief the question of transfer and the matter will be considered at a bimonthly Panel hearing session. In the meantime, your jurisdiction continues until any transfer ruling becomes effective.

　　If you have a motion pending – such as a motion to remand to state court (if the action was removed to your court) – you are free to rule on the motion, of course, or wait until the Panel has decided the transfer issue. The latter course may be especially appropriate if the motion raises questions likely to arise in other actions in the transferee court and, in the interest of uniformity, might best be decided there if the Panel orders centralization.

　　Please feel free to contact our staff in Washington with any questions.

Kindest regards,

Wm. Terrell Hodges
Chairman

# Exhibit D

02/29/2008  19:44   212-403-5663       DLA PIPER US LLP                PAGE  15/40

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------- x

IN RE: NEW YORK BEXTRA AND CELEBREX                  :   Index No. 762000/06
PRODUCT LIABILITY LITIGATION                         :

-------------------------------------------------------------- x

KEVIN PITCHER,                                       :   Index No. 111311/06

                        Plaintiff,                   :

                                                     :

PFIZER INC., PHARMACIA CORPORATION, a wholly-        :   STIPULATION OF
owned subsidiary of PFIZER INC., PHARMACIA &         :   DISMISSAL WITH
UPJOHN COMPANY, a wholly-owned subsidiary of         :   PREJUDICE AGAINST
PHARMACIA CORPORATION, and MERCK & CO.,              :   PFIZER DEFENDANTS
INC.,                                                :

                        Defendants.                  :
-------------------------------------------------------------- x

IT IS HEREBY STIPULATED AND AGREED, by and between the parties to the above-

entitled action through their respective attorneys, that whereas no party hereto is an infant,

incompetent person for whom a committee has been appointed or conservatee and no person not

a party has an interest in the subject matter of this action, all claims asserted against Pfizer Inc.,

Pharmacia Corporation, and Pharmacia & Upjohn Company ("Pfizer Defendants") in the

Complaint in the above-entitled action are dismissed with prejudice and without costs to any of

the parties as against the other.  This Stipulation may be filed without further notice with the

Clerk of the Court.  A facsimile copy of this Stipulation shall have the same effect as the original.

Dated:  New York, New York
        March 5    , 2008

LAW OFFICE OF RONALD R. BENJAMIN        DLA PIPER US LLP

By: _____          By: _____
    Ronald R. Benjamin                      Christopher M. Strongosky
    126 Riverside Drive                      Tiffany L. Christian
    P.O. Box 607                             1251 Avenue of the Americas
    Binghamton, New York 13902-0607          New York, NY 10020-1104
    607-772-1442                             212-335-4500

*Attorneys for Plaintiff*                 *Attorneys for Pfizer Defendants*


HUGHES HUBBARD & REED LLP

By: _____
    Vilia B. Hayes
    One Battery Park Plaza
    New York, NY 10004-1482
    212-837-6000

*Attorneys for Merck & Co., Inc.*

17 26 FAX
/03/2008  11:33    212-403-5663

HH&R LLP 11W
DLA PIPER US LLP

028/028
PAGE  29/31

Clerk of the Court.  A facsimile copy of this Stipulation shall have the same effect as the

original.

Dated:  New York, New York
        March 4, 2008

LAW OFFICE OF RONALD R. BENJAMIN

By: _____
     Ronald R. Benjamin
     126 Riverside Drive
     P.O. Box 607
     Binghamton, New York 13902-0607
     607-772-1442

*Attorneys for Plaintiff*

DLA PIPER US LLP

By: _____
     Christopher M. Strongosky
     Tiffany L. Christian
     1251 Avenue of the Americas
     New York, NY 10020-1104
     212-335-4500

*Attorneys for Pfizer Defendants*

HUGHES HUBBARD & REED LLP

By: *Vilia B. Hayes*
     Vilia B. Hayes
     One Battery Park Plaza
     New York, NY 10004-1482
     212-837-6000

*Attorneys for Merck & Co., Inc.*

# Exhibit E

505 ≠ 23

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x
                                                        :    Index No. 560001/2005
                                                        :
IN RE: NEW YORK BEXTRA AND CELEBREX                     :    CASE MANAGEMENT
PRODUCT LIABILITY LITIGATION                            :    ORDER NO. 6
                                                        :
                                                        :
-------------------------------------------------------------------x
THIS DOCUMENT APPLIES TO ALL CASES                     :
-------------------------------------------------------------------x

# FILED

AUG 1 6 2006

NEW YORK
COUNTY CLERK'S OFFICE

## Plaintiff Fact Sheets And Defendant Fact Sheets

**I.    Applicability And Scope Of Order**

1.    This Order governs certain pretrial procedures for cases involving the

prescription medications Bextra and Celebrex which are presently or hereafter assigned to

this Court ("Coordinated Proceeding").  This Order shall apply to all Plaintiffs who allegedly

suffered personal injury from taking Bextra and/or Celebrex in cases currently pending in or that

have been or will be originally filed in, or transferred to, this Court and assigned thereto.  This

Order is binding on all parties and their counsel in all cases currently pending or subsequently

made part of these proceedings.

**II.    Plaintiff Fact Sheets, Documents And Authorizations**

2.    Plaintiffs' Obligation To Serve Plaintiff Fact Sheets and Responsive

Documents.

a.    Applicable Plaintiff Fact Sheet.  Each individual Plaintiff bound by

this Order shall serve upon Defendants' counsel a complete and signed Plaintiff Fact Sheet

("PFS") in the forms set forth in Attachments A (Bextra-only Plaintiffs), B (Celebrex-only

Plaintiffs), or C (Plaintiffs who allege taking both Bextra and Celebrex) pursuant to the schedule

ordered in paragraph 5 herein.  If a Plaintiff initially completes Attachment A or B hereto and

medical records or other information subsequently reveal that Plaintiff took both Bextra and Celebrex, such Plaintiff shall provide the additional information contained in Attachment C within sixty (60) days upon request by any Defendant. Each PFS shall be mailed to Defendants' counsel as follows:

> Loren H. Brown
> Raymond M. Williams
> Attn: Bextra/Celebrex—NY COORD. PROC.
> DLA PIPER RUDNICK GRAY CARY US LLP
> 1251 Avenue of the Americas
> New York, New York 10020

b.    Responsive Documents. The Plaintiff shall also produce with his or her PFS all documents responsive to the document requests contained therein ("responsive documents"). If neither Plaintiff nor Plaintiff's counsel possess responsive documents, Plaintiff's counsel must inform Defendants' counsel of such in writing concurrently with serving the PFS.

c.    Answers Binding As If Interrogatory Responses And Signed Under Penalty Of Perjury. All responses in a PFS are binding on the Plaintiff as if they were contained in responses to interrogatories. Each PFS shall be signed and dated by the Plaintiff or the proper Plaintiff representative under penalty of perjury.

d.    Plaintiffs Suing In Representative Or Derivative Capacity. If the Plaintiff is suing in a representative or derivative capacity (e.g., on behalf of an estate, as a survivor, and/or as an assignee or subrogee), the completed PFS and produced responsive documents must provide information about the individual who allegedly took Celebrex and/or Bextra.

M0CE744643

3. <u>Plaintiffs' Obligation To Serve HIPAA-Compliant Authorizations.</u>

a. <u>Five Blank Medical Authorizations Served With PFS.</u>   Each individual Plaintiff subject to this Order shall serve upon Defendants' counsel designated above along with his or her PFS and responsive documents five originals of the "Authorization for the Release of Medical Records" for all health care providers and other sources of information and records (including but not limited to pharmacies, insurance companies, and/or any applicable state or federal government agencies) (collectively, "custodian of records") in forms as agreed upon by Plaintiffs' and Defendants' Liaison Counsel and contained in CMO No. 7.   The "Authorization for the Release of Medical Records" shall distinguish between Plaintiffs asserting no psychological injury and Plaintiffs asserting psychological injury, and each individual Plaintiff shall serve the version that is applicable to that individual Plaintiff.   The authorizations shall be dated and signed without setting forth the identity of the custodian of the records or provider of care.

b. <u>Three Blank Employment Authorizations Served With PFS.</u>   Each individual Plaintiff subject to this Order shall serve upon Defendants' counsel designated above along with his or her PFS and responsive documents three originals of the "Authorization for the Release of Employment Records" for all employers in forms to be agreed upon by Plaintiffs' and Defendants' Liaison Counsel with respect to Plaintiffs asserting no wage loss claim and Plaintiffs asserting a wage loss claim.   The authorizations shall be dated and signed without setting forth the identity of the employer.

c. <u>Custodian-Specific Updated Or Additional Authorizations.</u>   If a health care provider, employer, or other custodian of records: (i) has a specific authorization form it requires its patients to use, (ii) requires a more recent authorization than the

M0CE744644

authorizations initially provided by Plaintiff, (iii) requires a notarized authorization, or (iv) requires an original signature and the record collection company or companies jointly retained by the parties have already used all original authorizations provided by Plaintiff, then the record collection company or companies retained by the parties shall so notify Plaintiff's counsel and provide such specific authorization(s) and/or new blank authorization(s) to Plaintiff's counsel. Plaintiff shall execute such specific, updated and/or original authorization(s) within thirty (30) days and pursuant to paragraph 3.d. herein, where applicable. Where Plaintiff identifies one of the custodians of record listed in Attachment D hereto in his or her Plaintiff Fact Sheet, such Plaintiff shall execute the applicable custodian-specific authorization for that custodian and provide such authorization along with his or her Plaintiff Fact Sheet, blank authorizations and responsive documents. Plaintiffs' Liaison Counsel shall make the custodian-specific authorizations for the custodians listed in Attachment D available to Plaintiffs' counsel.

       d.    <u>Plaintiffs Suing In Representative Or Derivative Capacity</u>.  If the Plaintiff is suing in a representative or derivative capacity, the authorizations must be signed and produced along with documentation, if any exists, establishing that the signatory is a duly appointed representative or is otherwise permitted to execute authorizations on behalf of the person who allegedly took Celebrex and/or Bextra.

       4.    <u>Use Of Authorizations</u>.

       a.    <u>Custodians Listed In PFS</u>.  Any record collection company or companies jointly retained by the parties may use the authorizations (including copies of the original blank authorizations) for any health care provider, employer, or other custodian of records identified in the PFS without further notice to the Plaintiff's counsel. Any Plaintiff who has an objection to the collection of records from any health care provider, employer, or other

4

M00E7444645

custodian of records identified in the PFS shall make such objection to Defendants at the time the PFS is provided, or else any such objection to the use of the authorization is waived. This provision shall not waive any right that an individual may have to request the return of the records, to challenge the admissibility of the records, or to otherwise move the Court for appropriate relief.

    b.  <u>Custodians Not Listed In PFS</u>. If the Defendants wish to use an authorization to obtain records from a custodian that is not identified in the PFS, the record collection company or companies jointly retained by the parties shall provide the Plaintiff's counsel for that particular case with seven days written notice (by facsimile) of the intent to use an authorization to obtain records from that custodian. If Plaintiff's counsel fails to object to the request within seven days (by facsimile), the retained record collection company or companies may use the authorization to request the records from the custodian identified in the notice. If Plaintiff's counsel objects to the use of the authorization to obtain records from the custodian identified in the notice within said seven-day period, such objection must be served on Defendants' counsel designated above in writing (by facsimile) and must identify the legal basis for the objection and describe the nature of the documents to which the objection is asserted in a manner that, without revealing the information allegedly protected, will enable the Defendants to assess the applicability of the asserted protection.

    5.  <u>Schedule For Serving Plaintiff Fact Sheets, Responsive Documents And Authorizations</u>. Plaintiffs in cases filed prior to the date of entry of this Order shall have sixty (60) days from the date of entry of this Order to serve upon Defendants' counsel designated above a complete and signed PFS, all responsive documents (or a written notice that none are in the possession of Plaintiff or Plaintiff's counsel) and properly executed authorizations. Each

M005744646

Plaintiff in cases that are filed in the New York Unified Court System and that are or will be subject to this Coordinated Proceeding after the date of entry of this Order shall serve upon Defendants' counsel designated above a complete and signed PFS, all responsive documents (or a written notice that none are in the possession of Plaintiff or Plaintiff's counsel) and properly executed authorizations within sixty (60) days from the date of filing. For the purpose of this paragraph, the "date of filing" is defined as the date on which the case is filed in the New York Unified Court System. Notwithstanding the provisions of this paragraph, in cases that have been filed but where the complaint has not been served upon Defendants, Defendants' receipt of a PFS, responsive documents, authorizations or other such materials served under this paragraph shall not constitute or be deemed consent to personal jurisdiction or a waiver of any service requirement in such cases under applicable law.

      6.    <u>Provision Of Medical Records To Parties</u>. Plaintiffs' and Defendants' Liaison Counsel shall make available, through an outside vendor(s) jointly selected and hired by Liaison Counsel, all records obtained from any health care provider(s) or other custodian(s) of records through an authorization or subpoena on a secure web site maintained by the outside vendor(s). Such records shall be Bates numbered by the vendor. Plaintiff's counsel in a specific case may access that web site to obtain copies of their clients' records only, and are hereby restricted from accessing or obtaining copies of any other individual's medical records through that web site or vendor. For each set of records Plaintiffs' counsel (or counsel for any other party) wishes to obtain from the vendor(s), Plaintiffs or the other party may be charged any one-time "viewing fees" established by the vendor(s) and agreed to by the parties, plus half of any fee charged by the records custodian, which shall be payable directly to the vendor(s). If a third party (for example, a treating physician defendant or other third party or, as the case may be, a

M00E744647

Plaintiff) also wishes to obtain the records, that party shall be charged one-third of the fee charged by the record custodian, and one-third of the fee paid by each earlier party who obtained the records shall be refunded by the vendor(s). Plaintiffs (or counsel for any other party) will be able to download and copy any and all viewed records for their use at no additional expense. The Defendants shall have no other obligation to provide medical or other records obtained pursuant to the authorization(s) to Plaintiffs, including prior to the deposition of any Plaintiff.

### III.    Dismissal Of Plaintiffs' Claims For Failure To Comply With Discovery Obligations

7.    Notice That Claims May Be Dismissed. Any Plaintiff who fails to comply with any discovery obligations imposed by this Order within the time periods set forth herein may be subject to having his or her claims, as well as any derivative claim(s), dismissed if good cause for such dismissal is shown. Good cause shall exist where there is a material deficiency in responding to required discovery, i.e., one that prejudices Defendants through a failure to provide necessary information, thereby impeding Defendants' access to material and relevant evidence. Any dismissal may be with or without prejudice as the Court may determine in an individual case. Defendants have informed the Court that they intend to move to dismiss with prejudice those cases in which there is a material deficiency in responding to required discovery. The procedure for such motions shall be governed by paragraph 10 herein.

8.    Initial Notice Of Discovery Obligations.

a.    Notice By Court To Be Jointly Drafted By Parties. Plaintiffs' and Defendants' Liaison Counsel shall meet and confer to draft a notice from the Court to Plaintiffs' counsel regarding the Coordinated Proceeding, which such notice shall describe the status of the litigation, the Plaintiffs' discovery obligations, and any other duties imposed by the Court's various Case Management Orders and which shall enclose copies of the Case Management

7

MDCE724648

Orders applicable to all cases ("the Initial Notice"). Liaison Counsel shall update the Initial Notice from time to time as they see fit or as ordered by the Court. Plaintiffs' Liaison Counsel shall be responsible for transmitting the Initial Notice to Plaintiffs' counsel.

    b.   <u>Cases Presently Pending In The Coordinated Proceeding</u>. The Initial Notice provided to Plaintiffs' counsel in all cases pending in this Coordinated Proceeding as of the date of this Order shall inform Plaintiffs' counsel in the subject cases that, pursuant to this Case Management Order, Plaintiffs have sixty (60) days to serve upon Defendants' counsel designated above a complete and signed PFS, all responsive documents (or a written notice that none are in the possession of Plaintiff or Plaintiff's counsel) and properly executed authorizations.

    c.   <u>Cases Subsequently Filed And Transferred</u>. The Initial Notice provided to Plaintiffs' counsel in all cases transferred to or directly filed in this Coordinated Proceeding after the date of this Order shall inform Plaintiffs' counsel that, pursuant to this Case Management Order, Plaintiffs have sixty (60) days from the date of service or the date of transfer as defined in paragraph 5 above to serve upon Defendants' counsel designated above a complete and signed PFS, all responsive documents (or a written notice that none are in the possession of Plaintiff or Plaintiff's counsel), and properly executed authorizations.

    9.   <u>Notice Of Overdue Or Deficient Discovery</u>. When any Plaintiff has failed to materially comply with their obligations under this Order within the timelines established herein, Defendants' Liaison Counsel or her designee shall send a notice of the material deficiency to the Plaintiff's counsel for the individual whose responses are alleged to be defective ("the deficiency letter"). The deficiency letter shall identify with particularity the alleged material deficiency, state that the Plaintiff will have thirty (30) days to cure the alleged

8

material deficiency, and state that absent the alleged material deficiency being cured within that time (or within any extension of that time as agreed to by the parties), Defendants may move for dismissal of Plaintiff's claims, including dismissal with prejudice upon an appropriate showing. Plaintiffs' Liaison Counsel or his designee shall be electronically copied with the deficiency letter. This provision shall not be construed to prevent Defendants' Liaison Counsel or her designee from meeting and conferring with Plaintiffs' Liaison Counsel regarding any other deficiencies.

      10.    <u>Procedure For Dismissal Of Cases With Material Deficiency</u>. The procedure for the motions referenced in paragraph 7 shall be as follows:

      a.    If Plaintiff's individual counsel responds to the deficiency letter, Defendants' Liaison Counsel or her designee shall meet and confer with such counsel with respect to the purported deficiency.

      b.    If the parties' meet and confer is unsuccessful, or if Plaintiff's individual counsel does not respond to the deficiency letter and a subsequent meet and confer effort under New York Rules of Court § 202.7 (22 N.Y.C.R.R. 202.7), Defendants' Liaison Counsel or her designee may file a motion (a "compliance motion") with the Special Master (appointed by the Court to hear such disputes) seeking a report and recommendation requiring Plaintiff to comply with this Order within twenty-one (21) days, or face a dismissal motion to be filed with the Court, including dismissal with prejudice, or other sanctions.

      c.    Such compliance motion shall be heard on an expedited basis. A compliance motion may be noticed twenty-one (21) calendar days before the hearing date, with any opposition to be filed ten (10) calendar days before the hearing and any reply to be filed five (5) calendar days before the hearing.

M0CE744650

d.      If the Special Master appointed by the Court to hear such disputes determines that Plaintiff's discovery is materially deficient, it shall issue a report and recommendation requiring Plaintiff to comply with this Order within twenty-one (21) days ("the compliance order"), or face dismissal or other appropriate sanctions, as determined by the Court.

e.      If Plaintiff does not comply with the compliance order within twenty-one (21) days, Defendants' Liaison Counsel or her designee may file a motion with the Court to dismiss Plaintiff's claims with prejudice or for other appropriate sanctions (a "dismissal/sanctions motion").

f.      Such dismissal/sanctions motion shall be heard on an expedited basis. A dismissal motion may be noticed twenty-one (21) calendar days before the hearing date, with any opposition to be filed ten (10) calendar days before the hearing and any reply to be filed five (5) calendar days before the hearing.

g.      If the Court determines that Plaintiff has not complied with the compliance order, it may dismiss Plaintiff's claims with or without prejudice, or impose other sanctions, as it deems appropriate.

## IV.    Defendant Fact Sheet

11.    Pfizer Entities' Obligation To Serve Defendant Fact Sheet.    Defendants Pfizer Inc., Pharmacia & Upjohn Co., Pharmacia & Upjohn LLC, Pharmacia Corporation, and G.D. Searle LLC (formerly known as G.D. Searle & Co.) (collectively, "the Pfizer Entities"), shall collectively serve upon each Plaintiff's counsel of record (as identified in the PFS) a hard copy of a complete and verified Defendant Fact Sheet in the form set forth in Attachment E. An electronic copy of the Defendant Fact Sheet shall also be served on Plaintiffs' Liaison Counsel's

M00E744651

designee and individual counsel for each Plaintiff for whom an email address has been provided in the Plaintiff Fact Sheet.

12.    <u>Schedule For Serving Defendant Fact Sheet</u>.  The Pfizer Entities shall provide a complete and verified Defendant Fact Sheet within sixty (60) days after receipt of a substantially complete and verified PFS and substantially complete authorizations, or within sixty (60) days after service of the complaint, whichever is later.  If the Pfizer Entities fail to provide a completed and verified Defendant Fact Sheet within that time, Plaintiffs' Liaison Counsel shall provide notice to Defendants' Liaison Counsel by facsimile as provided in paragraph 13 herein.  The Pfizer Entities shall have an additional thirty (30) days to cure the deficiency.  No other extensions will be granted, absent good cause.

13.    <u>Notice Of Overdue Or Deficient Discovery</u>.  In the event that the Pfizer Entities have failed to materially comply with their obligations under this Order within the timelines established herein, Plaintiffs' Liaison Counsel shall send a notice of the material deficiency to the Defendants' Liaison Counsel.  The notice shall identify with particularity the alleged material deficiency, state that the Pfizer Entities will have thirty (30) days to cure the alleged material deficiency, and state that absent the alleged material deficiency being cured within that time (or within any extension of that time as agreed to by the parties), Plaintiffs' Liaison Counsel may, after meeting and conferring with Defendants' Liaison Counsel, move the Court or Special Master appointed by the Court to hear such disputes for evidentiary or other sanctions.  This provision shall not be construed to prevent Plaintiffs' Liaison Counsel or her designee from meeting and conferring with Defendants' Liaison Counsel regarding any other deficiencies.

MNIE744652

14.    <u>Notice That Court May Impose Sanctions</u>.  If the Pfizer Entities fail to comply with any discovery obligations imposed by this Order within the time periods set forth herein, the Pfizer Entities may be subject to such evidentiary or other sanctions as this Court (or Special Master appointed by the Court to hear such disputes) may see fit to impose, upon motion by Plaintiffs' Liaison Counsel, after meeting and conferring with Defendants' Liaison Counsel, if good cause for such sanctions is shown.  Good cause shall exist where there is a material deficiency in responding to required discovery, i.e., one that prejudices Plaintiff through a failure to provide necessary information, thereby impeding Plaintiff's access to material and relevant evidence.

M00E744653

V.     **Other Discovery**

15.     <u>Case-Specific Discovery</u>.  The parties shall meet and confer regarding a further schedule for discovery, a protocol for the selection of certain cases for an initial trial pool of cases to be initially addressed by this Court and case-specific depositions as to those cases.

16.     <u>Generic Experts</u>.  The parties shall meet and confer regarding the subject of generic expert discovery.  The term "generic experts" refers to experts who will testify on issues of general or widespread applicability, including but not limited to those who will testify on general causation.  The parties shall meet and confer to agree upon timing for the identification of generic experts, the number of generic experts, the contents of generic experts' reports and the schedule for generic expert discovery and *Daubert / Frye* motions.

**FILED**

SO ORDERED.                                                            AUG 16 2006

Dated: ___8/14___, 2006                          NEW YORK
                                                                 COUNTY CLERK'S OFFICE

                                        Hon. Shirley Werner Kornreich
                              SHIRLEY WERNER KORNREICH
                                                                        J.S.C.

7987997v7

M00E744654

# Exhibit F

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------X

KEVIN PITCHER,

                        Plaintiffs,

        - against -                                           Index No.: 111311/06

PFIZER, INC., PHARMACIA CORPORATION, a
wholly-owned subsidiary of PFIZER, INC.,
and PHARMACIA & UPJOHN COMPANY, a wholly-
owned subsidiary of PHARMACIA CORPORATION,
and MERCK & CO., INC.

                        Defendants.

-------------------------------------------------------X

## PLAINTIFF PROFILE FORM

    Other than in Sections I (B), those questions using the term "You" should refer to the person who used VIOXX®. Please attach as many sheets of paper as necessary to fully answer these questions.

### I.    CASE INFORMATION

A.  Name of person completing this form:  _____KEVIN L. PITCHER_____

B.  If you are completing this questionnaire in a representative capacity (e.g., on behalf of the estate of a deceased person or a minor), please complete the following:

   1.  Social Security Number: _____

   2.  Maiden or other names used or by which you have been known: _____

   3.  Address: _____

   4.  State which individual or estate you are representing, and in what capacity you are representing the individual or estate? _____

   5.  If you were appointed as a representative by a court, state the:
       Court: _____  Date of Appointment: _____

   6.  What is your relationship to deceased or represented person or person claimed to be injured? _
       _____

   7.  If you represent a decedent's estate, state the date of death of the decedent and the address of the place where the decedent died:
       _____

C.  Claim Information

    1.  Are you claiming that you have or may develop bodily injury as a result of taking VIOXX®?
        Yes __X__  No _____    *If "yes,"*

        a.  What is your understanding of the bodily injury you claim resulted from your use of
            VIOXX®? __Angina/chest pain/shortness of breath__

        b.  When do you claim this injury occurred? __12/2004__

        c.  Who diagnosed the condition? _____

        d.  Did you ever suffer this type of injury prior to the date set forth in answer to the prior
            question? Yes_X_  No ___ *If "yes,"* when and who diagnosed the condition at that
            time? _____

        e.  Do you claim that your use of VIOXX® worsened a condition that you already had or
            had in the past? Yes __X__  No _____ *If "yes,"* set forth the injury or condition;
            whether or not you had already recovered from that injury or condition before you took
            VIOXX®; and the date of recovery, if any.
            _____

D.  Are you claiming mental and/or emotional damages as a consequence of VIOXX®?
    Yes __X__  No _____
    *If "yes,"* for each provider (including but not limited to primary care physician, psychiatrist,
    psychologist, counselor) from whom have sought treatment for psychological, psychiatric or
    emotional problems during the last ten (10) years, state:

    a.  Name and address of each person who treated you: __None__

    b.  To your understanding, condition for which treated: _____

    c.  When treated: _____

    d.  Medications prescribed or recommended by provider: _____

## II.  PERSONAL INFORMATION OF THE PERSON WHO USED VIOXX®

A.  Name: __KEVIN LEE PITCHER__

B.  Maiden or other names used or by which you have been known: __None__

C.  Social Security Number: ____ ██████ _____

D.  Address: __29 Madison Avenue, Apt. 2-C, Endicott, NY 13760__

E.  Identify each address at which you have resided during the last ten (10) years, and list when you

M:\DEB78268

started and stopped living at each one:

| Address | Dates of Residence |
|---|---|
| 29 Madison Avenue, Apt. 2-C, Endicott, NY 13760 | Approx. 2002-present |
| 517 River Terrace, Endicott NY | Approx. 1997-2002 |

F.  Driver's License Number and State Issuing License: ▓▓▓▓▓▓▓

G.  Date and Place of Birth: ▓▓▓▓▓▓▓ in Johnson City, New York

H.  Sex: Male __X__ Female ____

I.  Identify the highest level of education (high school, college, university or other educational institution) you have attended (even if not completed), the dates of attendance, courses of study pursued, and diplomas or degrees awarded:

| Institution | Dates Attended | Course of Study | Diplomas or Degrees |
|---|---|---|---|
| Union Endicott | 75-78 | Required | High School |
| | | | |

J.  Employment Information.

1.  Current employer (if not currently employed, last employer):

| Name | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
| Morabito Fuel Group | 44 Grand Street Sidney, NY 13838 | 10/18/01 - 3/28/03 | Fuel delivery Tanker Driver |

2.  List the following for each employer you have had in the last ten (10) years:

| Name | Address | Dates of Employment | Occupation/Job Duties |
|---|---|---|---|
| Vestal Asphalt | 201 Stage Road, Vestal, NY 13850 | 4/01 to 9/01 | truck driver |
| Cardinal Freight | 5333 Davidson Hwy, Concord, NC 28027 | 7/00-9/00 | truck driver |

| Wallpole Leasing | P.O. Box 1177, Okeechobee, FL | 4/00 - 6/00 | truck driver |
|---|---|---|---|
| Mail Contractors of America | 100 Morgan Keetan Drive, Little Rock AK | 11/99 - 3/00 | truck driver |
| Kane Freight | 3 Stauffer Industrial Park, Taylor, PA | 8/99 - 11/99 | truck driver |
| Broome Bituminous | 416 Prentice Road Vestal, NY 13850 | 6/97 - 8/99 | truck |
| Air Ride, Inc. | Canton, OH | 7/96 - 8/96 | truck |

3. Are you making a wage loss claim for either your present or previous employment?
Yes _____ No __X__
*If "yes,"* state your annual income at the time of the injury alleged in
Section IC: _____

K. Military Service Information: Have you ever served in the military, including the military reserve or national guard? Yes _____ No __X__

*If "yes,"* were you ever rejected or discharged from military service for any reason relating to your physical, psychiatric or emotional condition? Yes _____ No _____

L. Insurance / Claim Information:

1. Have you ever filed a worker's compensation and/or social security disability (SSI or SSD) claim? Yes __X__ No _____  *If "yes,"* to the best of your knowledge please state:

   a. Year claim was filed: __August 25, 1996 and March 2003_____

   b. Nature of disability: ___Back injury_____

   c. Approximate period of disability: ___Approx. August 25, 1996 - June 1997 back to work until December 30, 2002__

2. Have you ever been out of work for more than thirty (30) days for reasons related to your health (other than pregnancy)? Yes __X__ No _____  *If "yes,"* set forth when and the reason. __Back injury_____.

3. Have you ever filed a lawsuit or made a claim, other than in the present suit, relating to any bodily injury? Yes _____ No __X__  *If "yes,"* state to the best of your knowledge the court in which such action was filed, case name and/or names of adverse parties, and a brief description for the claims asserted. _____

M. As an adult, have you been convicted of, or plead guilty to, a felony and/or crime of fraud or dishonesty? Yes _____ No __X__  *If "yes,"* set forth where, when and the felony and/or crime. _____

### III.  FAMILY INFORMATION

A.  List for each marriage:

   1. The name of your spouse    Patricia Pitcher

   2. Spouse's date of birth (for your current spouse only)_____

   3. Spouse's occupation    UE School District Secretary

   4. Date of marriage    Approx 1982

   5. Date the marriage ended, if applicable  8 or 9 years ago

   6. How the marriage ended (e.g., divorce, annulment, death):   Divorce

B.  Has your spouse filed a loss of consortium claim in this action? Yes _____ No  X

C.  To the best of your knowledge did any child, parent, sibling, or grandparent of yours suffer from any type of cardiovascular disease including but not limited to: heart attack, abnormal rhythm, arteriosclerosis (hardening or the arteries), murmur, coronary artery disease, congestive heart failure, enlarged heart, leaking valves or prolapse, heart block, congenital heart abnormality, scarlet fever, rheumatic fever, atrial fibrillation, stroke?

   Yes  X  No _____ Don't Know _____  *If "yes,"* identify each such person below and provide the information requested.

   Name:    Alice Pitcher
   Current Age (or Age at Death):    74
   Type of Problem:    Heart block
   If Applicable, Cause of Death: _____

D.  If applicable, for each of your children, list his/her name, age and address:

   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

E.  If you are claiming the wrongful death of a family member, list any and all heirs of the decedent.   Not applicable

### IV.  VIOXX® PRESCRIPTION INFORMATION

A.  Who prescribed VIOXX® for you?    Kevin Hastings, D.C., and  Andrew J. Whittock, P.A.

B.  On which dates did you begin to take, and stop taking, VIOXX®?
    Began: 9/15/03        Stopped:  On or about 9/30/04

C.  Did you take VIOXX® continuously during that period? Yes X  No ___ Don't recall ____

M00EB78271

D.  To your understanding, for what condition were you prescribed VIOXX®?
    __Back pain and Inflammation__

E.  Did you renew your prescription for VIOXX®? Yes __X__ No ____ Don't recall ____

F.  If you received any samples of VIOXX®, state who provided them, what dosage, how much
    and when they were provided:  _____

G.  Which form of VIOXX® did you take (check all that apply)?
    _____ 12.5 mg Tablet (round, cream, MRK 74)
    _____ 12.5 mg Oral Suspension
    __X__ 25 mg Tablet (round, yellow, MRK 110)
    _____ 25 mg Oral Suspension
    _____ 50 mg Tablet (round, orange, MRK 114)

H.  How many times per day did you take VIOXX®?  __Once per day__

I.  Did you request that any doctor or clinic provide you with VIOXX® or a prescription for
    VIOXX®? Yes _____ No __X__ Don't recall _____

J.  Instructions or Warnings:
    1.  Did you receive any written or oral information about VIOXX® before you took it? Yes __
        _____ No __X__ Don't Recall _____

    2.  Did you receive any written or oral information about VIOXX® while you took it?  Yes __X__
        __ No _____ Don't Recall _____

    3.  If "yes,"
        a.  When did you receive that information?  __When renewed prescription__
        b.  From whom did you receive it?  __CVS Pharmacy__
        c.  What information did you receive?  __Information print out__

K.  What over-the-counter pain relief medications, if any, were you taking at the same time you were
    taking VIOXX®?  __Tylenol PRN__


## V.  MEDICAL BACKGROUND

A.  Height: __5'11"__

B.  Current Weight: __240lbs.__
    Weight at the time of the injury, illness, or disability described in Section I(C): __220 lbs.__

C.  Smoking/Tobacco Use History:  *Check the answer and fill in the blanks applicable to your
    history of smoking and/or tobacco use.*
    _X_ Never smoked cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
    ___ Past smoker of cigarettes/cigars/pipe tobacco or used chewing tobacco/snuff.
        a.       Date on which smoking/tobacco use ceased:  ___

b.          Amount smoked or used: on average _____ per day for _____ years.
\_\_\_Current smoker of cigarettes/cigars/pipe tobacco or user of chewing tobacco/snuff.

a.          Amount smoked or used: on average _____ per day for _____ years.
\_\_\_Smoked different amounts at different times.

D.  Drinking History. Do you now drink or have you in the past drank alcohol (beer, wine, whiskey, etc.)? Yes __X__ No _____ *If "yes," fill in the appropriate blank* with the number of drinks that represents your average alcohol consumption during the period you were taking VIOXX® up to the time that you sustained the injuries alleged in the complaint:
\_\_\_ drinks per week,
\_\_\_ drinks per month,
\_\_\_ drinks per year, *or*
\_X\_ Other (describe):    One 12 pack per week

E.  Illicit Drugs. Have you ever used (even one time) any illicit drugs of any kind within one (1) year before, or any time after, you first experienced your alleged VIOXX®- related injury?" Yes _____ No __X__ Don't recall _____ *If "yes"*, identify each substance and state when you first and last used it.

F.  Please indicate to the best of your knowledge whether you have ever received any of the following treatments or diagnostic procedures:
1.  Cardiovascular surgeries, including, but not limited to, the following, and specify for what condition the surgery was performed: open heart/bypass surgery, pacemaker implantation, vascular surgery, IVC filter placement, carotid (neck artery) surgery, lung resection, intestinal surgery:

| Surgery | Condition | When | Treating Physician | Hospital |
|---------|-----------|------|--------------------|----------|
| None    |           |      |                    |          |
|         |           |      |                    |          |

2.  Treatments/interventions for heart attack, angina (chest pain), or lung ailments:

| Treatment/Intervention | When | Treating Physician | Hospital |
|------------------------|------|--------------------|----------|
|                        |      |                    |          |

3.  To your knowledge, have you had any of the following tests performed: chest Xray, CT scan, MRI, angiogram, EKG, echocardiogram, TEE (trans-esophageal echo), bleeding scan, endoscopy, lung bronchoscopy, carotid duplex/ultrasound, MRI/MRA of the head/neck, angiogram of the head/neck, CT scan of the head, bubble/microbubble study, or Holter monitor? Yes __X__ No _____ Don't Recall _____ *If "yes,"* answer the following:

M00EB78273

| Diagnostic Test | When | Treating Physician | Hospital | Reason |
|---|---|---|---|---|
| Chest X-ray, EKG, Echocardiogram, Cardiac catheterization and coronary angiography | 1/18-1/21/05 | Mohamed Abdelazim, M.D. | UHS Wilson Medical Center | - Chest pain |
| Chest X-ray | 8/25/03 | | UHS Wilson Medical Center | |
| Stress echocardiogram | 12/04 | | Guthrie Clinic | Chest pain |
| Evaluation | 1/2003 | | Rochester General | Chest pain |
| Echocardiogram Cardiolite stress test; cardiac catheterization; cholangiography CT brain scan | 2/26 - 3/1/00 | Mohamed Abdelazim, M.D. | UHS Wilson Medical Center | Chest pain |

## VI.  DOCUMENTS

Please indicate if any of the following documents and things are currently in your possession, custody, or control, or in the possession, custody, or control of your lawyers by checking *"yes"* or *"no."* Where you have indicated *"yes,"* please attach the documents and things to your responses to this profile form.

A.  Records of physicians, hospitals, pharmacies, and other healthcare providers identified in response to this profile form. Yes __X__ No _____

B.  Decedent's death certificate (if applicable). Yes _____ No _____

C.  Report of autopsy of decedent (if applicable). Yes _____ No _____


## VII.  LIST OF MEDICAL PROVIDERS AND OTHER SOURCES OF INFORMATION

*List the name and address of each of the following:*

A.  Your current family and/or primary care physician:

| Name | Address |
|---|---|
| Akhbar Khan, M.D. | 161 Riverside Drive, Binghamton, NY 13905 |

B.  To the best of your ability, identify each of your primary care physicians for the last ten (10) years.

| Name | Address | Approximate Dates |
|---|---|---|
| Shoaib Ahmed, M.D. | Lourdes Primary Care Endicott, NY | 2003-2006 |
| Frank Floyd, M.D. | 800 Hooper Road, Endwell, NY 13760 | 1990-2003 |

M70EB78274

C. Each hospital, clinic, or healthcare facility where you have received inpatient treatment or been admitted as a patient during the last ten (10) years.

| Name | Address | Admission Dates | Reason for Admission |
|---|---|---|---|
| UHS-Wilson Medical Center | 33-57 Harrison Street Johnson City, NY 13790 | 2/26 - 3/1/00 1/18 - 1/21/05 7/23/03 | -Chest pain -Chest pain -Surgery - hernia |

D. Each hospital, clinic, or healthcare facility where you have received outpatient treatment (including treatment in an emergency room) during the last ten (10) years.

| Name | Address | Admission Dates | Reason for Admission |
|---|---|---|---|
| UHS-Wilson Medical Center | 33-57 Harrison Street Johnson City, NY 13790 | 2/26/00 | Chest pain |
|  |  |  |  |

E. Each physician or healthcare provider from whom you have received treatment in the last ten (10) years.

| Name | Address | Dates of Treatment |
|---|---|---|
| Kevin L. Hastings, Jr., D.O. | Osteopathic Pain Management Services 200 Front Street, Suite A Vestal, NY 13850 | 2003-2007 |
| Oakdale Medical Mohamad Abdelazim, M.D. | 700 Harry L Drive Johnson City, NY 13790 |  |
| Andrew J. Whittock, PA | 200 Front Street, Vestal, NY |  |
| Daniel Galyon, M.D. | Harrison Street, Johnson City, NY |  |
| Frank D. Floyd, M.D. | 800 Hooper Road, Endwell, NY 13760 |  |

F. Each pharmacy that has dispensed medication to you in the last ten (10) years.

| Name | Address |
|---|---|
| CVS Pharmacy # 1951 | 1103 North Street, Endicott, NY 13760 |
| UMM Pharmacy JC | 601 Riverside Drive, Johnson City, NY 13790 |
| Innoviant Pharmacy, Inc. | 1800 Byberry Road, Suite 1202, Huntingdon Valley, PA 19006 |
|  |  |

G. If you have submitted a claim for social security disability benefits in the last ten (10) years, state the name and address of the office that is most likely to have records concerning your claim.

| Name | Address |
|---|---|
| Social Security Administration | 15 Henry Street, Binghamton, NY 13901 |

H.  If you have submitted a claim for worker's compensation, state the name and address of the entity that is most likely to have records concerning your claim.

| | |
|---|---|
| NYS Workers Compensation Board | State Office Building, 44 Hawley Street, 1st Floor Binghamton, NY 13901-4440 |

## CERTIFICATION

I declare under penalty of perjury subject to N.Y. C.P.L.R. 3133(b) (McKinney 2005)  that all of the information provided in this Profile Form is true and correct to the best of my knowledge, that I have completed the List of Medical Providers and Other Sources of Information appended hereto, which is true and correct to the best of my knowledge, that I have supplied all the documents requested in part VI of this declaration, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers, and that I have supplied the authorizations attached to this declaration.


_Kevin Pitcher_
Signature

KEVIN PITCHER
Print Name

10/22/07
Date

M:00EB78276

# Exhibit G

```
KEVIN PITCHER++                              UMM PHARMACY JC
29 MADISON AVE APT 2SOUTH                    601 RIVERSIDE DR.
ENDICOTT, NY  13760                          JOHNSON CITY, NY  13790
BORN: 20 Sep 59                    From  01 Jan 92   To  19 Nov 04
Group # CA
```

| Rx # | Drug Name / NDC Code | Doctor | Date | Metric Qty | Days Sup | Refs-Rem | Price | Total |
|------|----------------------|--------|------|------------|----------|----------|-------|-------|
| 0410902 | WARFARIN 5MG TAB  59772037707 | MATEYA,LOUIS | 26 Nov 03 | 30 | 30 | | 17.02 | 17.02 |
| 0409987 | WARFARIN 7.5MG TAB  00555083402 | MATEYA,LOUIS | 12 Nov 03 | 30 | 30 | 5  5 | 16.50 | 16.50 |
| 0407203 | HYDROCODONE/APAP 7.5/750 TAB  00406036005 | FARRELL,MICHAEL | 26 Sep 03 | 30 | 5 | | | |
| 0406452 | AMITEX-PSE 120/600 TAB  52152013004 | WALKER,STEVEN | 17 Sep 03 | 20 | 10 | 2  2 | | |
| 0406294 | VIOXX 25MG TAB  00006011068 | HASTINGS,KEVIN | 15 Sep 03 | 30 | 30 | 2  1 | | |
| | | | 13 Oct 03 | 30 | 30 | | | |
| 0405661 | NYSTATIN/TRIAMCIN  CRE  00168008160 | MATEYA,LOUIS | 03 Sep 03 | 60 | 10 | 1  1 | | |
| 0405660 | TRAZODONE 50MG TAB  50111043301 | MATEYA,LOUIS | 03 Sep 03 | 30 | 30 | 2  1 | | |
| | | | 13 Oct 03 | 30 | 30 | | | |
| 0404584 | PAXIL CR 12.5MG TAB  00029320613 | GHUMAN,HARKIRAT | 14 Aug 03 | 30 | 30 | | | |
| 0404549 | CIPROFLOXACIN 500MG TAB  67767013801 | GHEORGHE,VICREL | 14 Aug 03 | 20 | 10 | | | |
| 0404548 | PHENAZOPYRIDINE 100MG TAB  53265019610 | GHEORGHE,VICREL | 14 Aug 03 | 6 | 2 | | | |
| 0403551 | CIPROFLOXACIN 500MG TAB  67767013801 | THAMMAVONG,ROULAY | 28 Jul 03 | 14 | 7 | | | |
| 0402818 | GEMFIBROZIL 600MG TAB  00093067005 | GHUMAN,HARKIRAT | 16 Jul 03 | 60 | 30 | 5  2 | | |
| | GEMFIBROZIL 600MG TAB  60505003408 | | 10 Sep 03 | 60 | 30 | | | |
| | | | 21 Oct 03 | 60 | 30 | | | |
| | | | 05 Jan 04 | 60 | 30 | | 24.02 | 24.02 |
| 0402537 | SEPTRA DS 160/800 TAB  61570005305 | GHUMAN,HARKIRAT | 11 Jul 03 | 28 | 14 | | | |
| 0401584 | ACETASOL-HC OTIC  SOL  00472088282 | WALKER,STEVEN | 26 Jun 03 | 10 | 15 | | | |
| 0398289 | PAXIL CR 12 5MG TAB  00029320613 | GHUMAN,HARKIRAT | 14 May 03 | 30 | 30 | 2 | | |
| | | | 16 Jun 03 | 30 | 30 | | | |
| | | | 16 Jul 03 | 30 | 30 | | | |
| 0398287 | GEMFIBROZIL 600MG TAB  00093067005 | GILL,ROY | 14 May 03 | 60 | 30 | | | |
| 0143190 | ZANTAC 300MG TAB  00173039340 | STUBBS,G.WYNNE | 22 Jul 93 | 30 | 7680 | | | |
| 0159887 | TYLENOL/COD #3 TAB  00045051380 | MARINO,JOSEPH | 27 Feb 94 | 20 | 1280 | | | |
| 0236124 | LOTRISONE  CRE  00085092401 | FLOYD,FRANK | 23 Jan 97 | 225 | 1280 | | | |

```
                                                          =========
                                              Total ->       57.54
```

Pharmacist's Signature _____

```
                                          FROM   3-14-03 TO   11-15-04
            INNOVIANT PHARMACY, INC.
            1800 BYBERRY RD SUITE 1202
            HUNTINGDON VALLEY PA 19006
RECORD OF PRESCRIPTIONS FOR  PITCHER(BACK)        FAMILY       PAGE  1

KEVIN PITCHER(BA              BIRTH DATE:   9-20-59  SS#   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
WC1
--

    RX #     DATE   BILL   - - - - - - DRUG - - - - - - RPH  QTY  RFL

KEVIN             PITCHER(BACK)          BIRTH DATE:   9-20-59
00231779  7-28-04 WCN   METHYLPREDNISOLONE DOSP 4MG 4MG   BA    21  0 OF  0
                        00603-4593-15 TAB  $12.25   DR WASYLIW
                        AS DIRECTED

00219465  6-02-04 WCN   VIOXX TAB 25MG                  BA    30  0 OF  2
                        00006-0110-31 TAB $106.35   DR WHITTOCK
                        TAKE 1 TABLET BY MOUTH ONCE
                        DAILY

00219465  7-22-04 WCN   VIOXX TAB 25MG                  BA    30  2 OF  2
                        00006-0110-31 TAB $108.95   DR WHITTOCK
                        TAKE 1 TABLET BY MOUTH ONCE
                        DAILY

00219465  6-28-04 WCN   VIOXX TAB 25MG                  BA    30  1 OF  2
                        00006-0110-31 TAB $108.95   DR WHITTOCK
                        TAKE 1 TABLET BY MOUTH ONCE
                        DAILY

00198654  2-25-04 WCN   VIOXX TAB 25MG                  TG    30  0 OF  2
                        00006-0110-31 TAB $103.97   DR HASTINGS
                        TAKE 1 TABLET BY MOUTH ONCE
                        DAILY

00198654  4-14-04 WCN   VIOXX TAB 25MG                  TG    30  2 OF  2
                        00006-0110-31 TAB $108.96   DR HASTINGS
                        TAKE 1 TABLET BY MOUTH ONCE
                        DAILY

00198654  3-22-04 WCN   VIOXX TAB 25MG                  TG    30  1 OF  2
                        00006-0110-31 TAB $103.97   DR HASTINGS
                        TAKE 1 TABLET BY MOUTH ONCE
                        DAILY

00177810  11-14-03 WCN  CYCLOBENZAPRINE TAB 10MG        HB    90  0 OF  2
                        50111-0563-03 TAB $118.67   DR HASTINGS
                        TAKE 1 TABLET BY MOUTH THREE
                        TIMES A DAY AS NEEDED FOR
                        BACK SPASMS

00177810  1-05-04 WCN   CYCLOBENZAPRINE TAB 10MG        HB    90  2 OF  2
                        50111-0563-03 TAB $118.67   DR HASTINGS
                        TAKE 1 TABLET BY MOUTH THREE
                        TIMES A DAY AS NEEDED FOR
                        BACK SPASMS
```

INNOVIANT PHARMACY, INC.
1800 BYBERRY RD SUITE 1202
HUNTINGDON VALLEY PA 19006

FROM 3-14-03 TO 11-15-04

RECORD OF PRESCRIPTIONS FOR PITCHER(BACK)

FAMILY          PAGE 2

KEVIN PITCHER(BA
WC1
--

BIRTH DATE: 9-20-59  SS# 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

| RX # | DATE | BILL | - - - - - DRUG - - - - - - | RPH | QTY | RFL |
|------|------|------|------|------|------|------|
| 00177810 | 12-10-03 | WCN | CYCLOBENZAPRINE TAB 10MG<br>50111-0563-03 TAB $118.67  DR HASTINGS<br>TAKE 1 TABLET BY MOUTH THREE<br>TIMES A DAY AS NEEDED FOR<br>BACK SPASMS | HB | 90 | 1 OF 2 |
| 00177808 | 11-14-03 | WCN | VIOXX TAB 25MG<br>00006-0110-31 TAB $103.97  DR HASTINGS<br>TAKE 1 TABLET BY MOUTH ONCE<br>DAILY FOR BACK PAIN | HB | 30 | 0 OF 2 |
| 00177808 | 1-05-04 | WCN | VIOXX TAB 25MG<br>00006-0110-31 TAB $103.97  DR HASTINGS<br>TAKE 1 TABLET BY MOUTH ONCE<br>DAILY FOR BACK PAIN | HB | 30 | 2 OF 2 |
| 00177808 | 12-10-03 | WCN | VIOXX TAB 25MG<br>00006-0110-31 TAB $103.97  DR HASTINGS<br>TAKE 1 TABLET BY MOUTH ONCE<br>DAILY FOR BACK PAIN | HB | 30 | 1 OF 2 |
| 00153836 | 7-03-03 | WCN | CYCLOBENZAPRINE TAB 10MG<br>50111-0563-03 TAB $19.78  DR GHUMAN<br>TAKE 1 TABLET THREE TIMES A<br>DAY AS NEEDED | TG | 15 | 0 OF 0 |
| 00140750 | 4-30-03 | WCN | SALSALATE TABLETS 750 MG<br>53265-0133-10 TAB $38.64  DR FLOYD<br>2 TABLETS TWICE DAILY | BA | 120 | 0 OF 5 |
| 00140750 | 6-16-03 | WCN | SALSALATE TABLETS 750 MG<br>53265-0133-10 TAB $38.64  DR FLOYD<br>2 TABLETS TWICE DAILY | BA | 120 | 2 OF 5 |
| 00140750 | 5-21-03 | WCN | SALSALATE TABLETS 750 MG<br>53265-0133-10 TAB $38.64  DR FLOYD<br>2 TABLETS TWICE DAILY | BA | 120 | 1 OF 5 |
| 00137362 | 3-14-03 | WCN | PAXIL CR TAB 12.5<br>00029-3206-13 TAB $97.11  DR FLOYD<br>TAKE 1 TABLET BY MOUTH ONCE<br>DAILY | TJG | 30 | 0 OF 11 |
| 00137347 | 3-14-03 | WCN | SALSALATE TABLETS 750 MG<br>53265-0133-10 TAB $32.20  DR FLOYD<br>2 TABLETS TWICE DAILY | TJG | 100 | 0 OF 1 |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of April, 2008, I caused a copy of the foregoing DEFENDANT'S COMBINED REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY, AND IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND to be served via first-class mail, postage prepaid, on the following:

> Ronald R. Benjamin, Esq.
> LAW OFFICES OF RONALD R. BENJAMIN
> 126 Riverside Drive, P.O. Box 607
> Binghamton, New York 13902

The above address has appeared on the prior papers in this action as the office address of the attorneys for Plaintiff.

Deponent is over the age of 18 years and not a party to this action.

I further certify under penalty of perjury that under the laws of the United States of America the foregoing is true and correct.

Executed on April 24, 2008

Jennifer Alpern Hecht